**Arthur S. ADAMS and Gertrude H. Adams**

**v.**

**Ronald E. ALLEY and Erna E. Alley.**

Supreme Judicial Court of Maine.

June 11, 1975.

Blaisdell & Blaisdell by Malcolm S. Stevenson, Ellsworth, for plaintiffs.

Libhart & Ferris by Wayne P. Libhart, Brewer, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Defendants appeal from a judgment of the Superior Court (Hancock County), which awarded plaintiffs equitable relief as recommended in a referee's report previously accepted by the Superior Court. We find defendants' appeal devoid of merit and deny it.

The factual and legal background of this case has already once received full amplification by this Court. Adams v. Alley, Me., 308 A.2d 568 (1973). Plaintiffs' action was in law for monetary damages allegedly caused by defendant Ronald E. Alley's breach of trust. The matter was referred to a referee by the Superior Court, the order of reference reserving to the parties the right to object to acceptance of the report pursuant to M.R.Civ.P. 53 (e)(2)(i). The referee found, concluded, and reported that defendant Ronald Alley had breached fiduciary duties owed to plaintiff Arthur S. Adams, and that land acquired by defendants Alley and his wife in their own names should be impressed with a trust for the benefit of plaintiffs Adams and his wife. To this end the referee reported that "the plaintiffs should have judgment that the defendants convey whatever legal interest they have acquired in the Dunphy lot . . . to the plaintiffs on payment of $1,500.00 by the plaintiffs within thirty (30) days of judgment." Since the plaintiffs' complaint encompassed only remedies in law, while the report recommended a trust remedy sounding in equity, the referee recognized that "amendments to the pleadings may be required to permit the judgment if approved."

The referee filed his report on August 26, 1971. The docket shows that copies of the report were "given" to the attorneys of record. On September 29, 1971, the Super-

ior Court accepted the report. The docket, as properly construed by the first *Adams* case, shows that copies of the notice of acceptance were sent to the attorneys of record on September 30, 1971. 308 A.2d at 570. At this point the Superior Court erred by proceeding to enforce the referee's report without first entering an enforceable final judgment on the records of the Superior Court. Id. at 571. The Law Court dismissed as premature defendants' appeal from the Superior Court proceedings and remanded the case to the Superior Court "for determination of what, if any, judgment (with or without amendment of pleadings) should be entered and for further action consistent with this opinion." Id. at 572.

On remand, defendants filed motions under Rule 53(e)(2)(iii) to object to the report of the referee. Four months passed. The Superior Court then ordered and decreed: (1) that defendants' motions for objections were untimely and are therefore denied; (2) that "[t]he motion to amend Plaintiff's (sic) complaint is now allowed and [the] complaint is amended accordingly"; and (3) judgment is entered on the trust remedy recommended by the referee, with defendants to convey the property to plaintiffs upon the tender of $1500 by the plaintiffs.

Defendants' present appeal assigns the following errors to the Superior Court: (1) that the court improperly denied defendants' motions to object to the report of the referee; (2) that the court erred in accepting plaintiffs' amendment to their complaint because the amendment was undocketed, and therefore the court's judgment is unfounded since the prerequisite amendment does not appear in the record; and (3) that the court erred in adopting the equitable remedy recommended by the referee, because equitable matters are not subject to reference.

Rule 53(e)(2)(iii) provides: "Except where the reference is by agreement without reservation of the right to object, any party may within 10 days after being served with notice of the filing of the report, serve written objection thereto upon the other parties." Defendants reserved the right to object to the report of the referee. The report was filed on August 26, 1971. As of that date, the docket states that "[c]opies of report [were] given to attorneys of record." If the delivery of the copies of the report to the attorneys of record was by manucaption, the clerk of courts may have diverged from the practice under Rule 53(e)(1), which states that "[t]he clerk shall forthwith mail to all parties notice of the filing." But any divergence from the strict letter of the Rule in the case before us would not toll the running of the 10 day period for filing objections to the report of the referee. Actual delivery of a copy of the referee's report would almost always serve as constructive notice of the filing of the report. Here, the docket recites that the report was "given" to the attorneys of record as of the date the report was filed. No reason appears not to charge defendants with constructive notice through their authorized attorney. Therefore it would seem that defendants did not file objections within 10 days "after being served with notice of the filing of the report," as required by Rule 53(e)(2)(iii). We reached a similar conclusion in the first *Adams* case. See 308 A.2d at 571.

Defendants argue somewhat vaguely that confusion incident to a change of counsel may have prevented them from receiving actual notice of the filing of the report of the referee on August 26, 1971. Defendants gravely assert that it is sufficient "to say present counsel did not have notice of the filing of the Referee's Report." But the lack of notice to present counsel will not suffice to resuscitate a right which had expired two years previously. "Service upon an attorney who has ceased to represent a party is a sufficient compliance . . . until written notice of change of attorneys has been served upon the

other parties." M.R.Civ.P. 5(b). Even if defendants' original counsel had withdrawn from their service as of August 26, 1971, said counsel was still the attorney of record, properly subject to service and notice, until written notice of change of attorneys had been served upon the other parties. There is no basis in the record that would vitiate the constructive notice charged to defendants by the docket recital that the referee's report was "given" to their original record counsel. Any omissions by the original counsel that may have affected defendants' right to file objections are a matter between the defendants and their original counsel. Present counsel may not redeem his cause by touting the alleged deficiencies of his predecessors, whose actions entailed binding legal effects. The Superior Court properly denied defendants' tardy motion of August 7, 1973 to file objections to the referee's report. See 308 A.2d at 571.

■ In entering judgment for the plaintiffs, the Superior Court allowed a motion to amend plaintiffs' complaint and deemed the complaint amended accordingly. Unfortunately, this is the sole record entry relating to the amendment proffered by plaintiffs to enlarge their complaint so as to encompass the equitable remedy recommended by the referee and adopted by the Superior Court. The text of the amendment does not appear in the record, and there is no specific docket entry corresponding to the submission of the amendment. Defendants urge that the Superior Court's allowance of the amendment and the court's explicit ruling on the amendment's sufficiency cannot overcome the absence of a docket entry for the amendment and the absence of the text of the amendment from the record. Defendants reason that if the amendment was improperly allowed, the judgment based on the amendment was intrinsically defective. Thus defendants argue that the judgment below should be vacated and the cause remanded to the Superior Court for further trial proceedings relating to plaintiffs' motion to amend.

We cannot agree that defendants were so substantially prejudiced by the allowance of the plaintiffs' undocketed amendment as to warrant vacating the judgment and reinstituting regular proceedings on the motion to amend. Defendants have no absolute right to a full-blown hearing on plaintiffs' motion. At most it would appear that defendants have a right under M.R.Civ. P. 15(a) to file a responsive pleading to the motion to amend. This right has been denied to defendants *only if we assume that they never in fact received plaintiffs' motion to amend* in time to plead responsively. But defendants do not claim not to have received the motion in due time to answer it. Similarly, defendants might have moved for a continuance before the Superior Court, and if the court in its discretion credited defendants' claim that they were likely to be prejudiced by the allowance of the motion to amend, a continuance could have been granted. Defendants made no showing of prejudice. Moreover, the record does not show, and defendants do not assert, that they made any effort to appeal to the discretion of the Superior Court for a continuance. See Field, McKusick & Wroth, Maine Civil Practice § 15.4 (2d ed. 1970). Instead defendants assert that they are to have orders vacated, cases remanded, and full-blown hearings as matters of right. We think defendants waived their right to object to the undocketed motion to amend. We would be much more impressed with their argument if they had demonstrated, or even claimed, that the proffered amendment was legally inadequate to reconcile plaintiffs' complaint with the remedy recommended by the referee and adopted by the Superior Court. In short, there is no ground presented for us to doubt the sound discretion of the Superior Court, that the motion to amend plaintiffs' complaint was properly allowed and was legally sufficient to form a basis for judgment.

■ While we are satisfied that justice is done by honoring the Superior Court's allowance of the undocketed amendment,

we are not pleased to sustain indirectly an amendment whose text is not in the record before us. But defendants do not claim that the motion to amend was legally insufficient to accomplish its purpose. And we note that there is at least some record basis, in the docket entry of the judgment, that the Superior Court passed on and approved the merits of the amendment. Though the Superior Court's one sentence mention approaches the bare minimum of what is an acceptable record basis for appellate review, we hold that in the present case it is sufficient. Cf. Sawyer v. Congress Square Hotel Co., 157 Me. 111, 112, 170 A.2d 645 (1961); Ouelette v. Pageau, 150 Me. 159, 163–64, 107 A.2d 500, 502–03 (1954).

We think it highly desirable that the judgment of the Superior Court be generally affirmed without subjecting the parties to the rigors of further litigation to validate the motion to amend.[1] In the past, when we were satisfied that the evidence and record were fully adequate to persuade us of a just result, we concluded that a remand to the Superior Court to compel the presiding Justice to identify and verify a matter of proof would be "a perfunctory redundancy." See State v. Collins, Me., 297 A.2d 620, 630 (1972). On that occasion we stated: "Hence, we perceive no danger to defendant of any grave injustice by a declination on our part to initiate, on our own motion, a procedure which, while reflective of a concern for theoretical nicety, would produce no practical difference in the ultimate outcome." Id. at 630. In the instant case, we may safely reaffirm those sentiments.

■ Although we are content to rest our holding in this case on the grounds previously stated, we do not think it improper for us to comment, in dicta, on the manner in which the referee framed equitable relief for a reference sounding in law.

Our comments will indulge defendants every benefit as against their insistent claims that the Superior Court denied them due process of law. Even though defendants' motions to file objections were properly denied, we think the reference may be subject to a review limited in scope, a review based on our inherent prerogative to cure manifest error. See Field, McKusick & Wroth, Maine Civil Practice § 46.1, at 632 (2d ed. 1970); § 53.4, at 196–97 (Supp. 1974). Also, our remarks may clarify the discretion of referees to frame relief with propriety according to the pleadings and issues before them.

■ Where the action is one in which equitable relief is sought or the case sounds in equity, we have stated that "tradition runs against the exercise of an equity court's discretion by someone other than the Equity Justice." See Ingham v. Tzikas, Me., 320 A.2d 665, 668 (1974). Prior to the adoption of the Maine Rules of Civil Procedure, Rule 2 of which effected a merger of law and equity, the tradition against reference of equity cases had the force of law. See, e. g., Faxon v. Barney, 132 Me. 42, 165 A. 165 (1933). The Reporter's Notes to Rule 53 aver that even after the merger of law and equity, "the court would not normally grant a reference in a case when equitable relief is sought." However, appointment of a referee rests in the sound discretion of the court, subject always to the language of M.R.Civ.P. 53, and it may be expected that the court in each case will make an ad hoc decision whether the questions involved are such as make the case appropriate for reference. We emphatically agree with our commentators that "the court in making the decision whether to allow a reference by agreement should not feel bound to draw the line on the basis of the law-equity distinction." See Field, McKusick & Wroth, Maine Civil Practice § 53.1, at 697–98 (2d ed. 1970).

1. The docket shows that plaintiffs' complaint was served on August 22, 1969.

**206**

■■ In the instant case, the reference was ordered for an action seeking specific legal relief. The referee determined upon a recommendation of equitable relief. Under a merger of law and equity, referees should be encouraged to exercise intelligent discretion in framing just relief. The pleadings before the referee presented factual allegations and legal issues fully adequate in scope to warrant the findings and relief reported by the referee. Plaintiffs amended their complaint to encompass the equitable remedy, and the Superior Court duly accepted the report and entered judgment on it. Thus we may distinguish this case from other cases where the Superior Court may have formulated new grounds or theories dehors the reference. See Cunningham v. Cunningham, Me., 314 A.2d 834, 840 & n. 5 (1974). Here, by failing to file timely motions to object, defendants dissipated their opportunity to litigate before the Superior Court their claim that they were prejudiced by the referee's equitable remedy. We have examined the issues, and we state that there was no manifest error. The legal standing of the reference in the instant case should not be impaired by reason of a law-equity distinction.

■ Although the record before the Law Court is deficient inasmuch as a crucial motion is undocketed, the omission from the docket is here a ministerial rather than a substantive fault. It is true that Rule 74(h) requires that the record on appeal shall always include, inter alia, copies of the material pleadings. And we would not deny that in some cases plaintiffs' motion to amend might reasonably be considered a material pleading. But on the record before us, the docket shows that the Superior Court considered the motion to amend, and granted it as material to plaintiffs' action. Thus, the docket entries here provide a basis both for the judgment of the Superior Court and for our appellate review. It is for this reason that we have held docket entries to be essential: they provide the best and often the only method of resolving many questions which arise during appellate review of a case. See Cote v. State Personnel Board, Me., 275 A.2d 601, 602 (1971). In the present case, the consideration of the motion to amend, as indicated by a docket entry, sufficiently cures the absence of the text of the motion from the record.

Moreover, M.R.Civ.P. 74(i) specifically provides: "If anything material to either party is omitted from the record on appeal . . . the Law Court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected." We deem the instant case a proper one for the exercise of our plenary power to rectify the docket and record before us. We have reviewed the entirety of the case so as to avoid the working of a manifest injustice. We believe our summary action under Rule 74(i) will promptly and effectively vindicate the respective rights of the parties.

The entry must be:

Appeal denied.

Remanded to the Superior Court for docketing of plaintiffs' motion to amend, as allowed December 17, 1973, and inclusion of said motion as a docket entry in the record of the case.

All Justices concurring.