STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-00-41

CHRYSLER FINANCIAL
COMPANY, LLC,[1]

    Petitioner

v.

STATE TAX ASSESSOR,

    Respondent

**DECISION ON APPEAL**

DONALD L. GARBRECHT
LAW LIBRARY

JUL 1 8 2002

This matter comes before the court on the petition of Chrysler Financial Company ("Chrysler") from a decision of the State Tax Assessor denying Chrysler's request for a credit or refund of certain sales tax. Pursuant to the provisions of 36 M.R.S.A. § 151, the court will make a *de novo* determination of the merits of the case.

### Facts

Petitioner Chrysler offers financing for automobile sales through retail car dealerships in Maine. At the time of sale, the purchaser applies for financing and, upon approval by Chrysler, the car dealer simultaneously assigns all of its right, title and interest to Chrysler without recourse. This means that Chrysler becomes a secured party in the motor vehicle with a right to repossess on default and it is entitled to all of the installment payments to be made by the consumer. In exchange

---

[1] The petitioner is now known as DaimlerChrysler Services North America, LLC.

1

for this assignment, Chrysler pays the car dealer the full amount due under the installment contract including the amount of sales tax due on the transaction. The car dealer then remits the full sales tax amount to the State of Maine.

This appeal concerns installment contracts that went into default. After the automobiles are repossessed and resold, Chrysler would attempt to collect the difference between the amount outstanding on the installment loan and the proceeds of the sale. If and when Chrysler concludes that the remaining unpaid balance is not realistically collectible, Chrysler then reports these losses on its federal income tax return. Because the unpaid balances include proportional shares of Maine sales tax that has already been paid, Chrysler seeks a refund or credit of those tax amounts under the Bad Debt Statute, 36 M.R.S.A. § 1811-A. That statute provides:

> **C. Credit for Worthless Accounts.** The tax paid on sales represented by accounts charged off as worthless may be credited against the tax due on a subsequent report filed within three years of the charge off, but, if any such accounts are thereafter collected by the retailer, a tax shall be paid upon the amounts so collected.

In 1995, Chrysler Credit, the predecessor of Chrysler Financial, was registered in Maine as a retailer and it filed sales and use tax reports. That registration was only valid from January 1, 1995, to December 30, 1995. In January 1996, Chrysler Credit merged into Chrysler Financial. On January 1, 2001, Chrysler Financial itself registered as a retailer in Maine.

In February 2000, Chrysler filed a request for a refund with the Maine Revenue Services seeking to recover $554,187.76 which it attributes to sales taxes

paid on unrecoverable balances of installment contracts. It is unclear from the supporting documentation when each of the individual outstanding balances was written off as uncollectible, but it appears to have been for a period beginning after 1994 and ending in mid-1999. In February of 2000, the application was denied on the basis that Chrysler was not the retailer. Chrysler requested a reconsideration, but by letter dated May 26, the request was denied by the Director of the Appellate Division. That denial constituted final agency action and Chrysler filed a timely request for review pursuant to 36 M.R.S.A. § 151 and M.R. Civ. P. 80C.

## Discussion

On review of a decision of the Assessor, this court "shall conduct a *de novo* hearing and make a *de novo* determination of the merits of the case. It shall make its own determination as to all questions of fact or law." 36 M.R.S.A. § 151 (Supp. 1998). The present appeal presents a very narrow issue -- whether Chrysler meets the statutory requirements to receive the sales tax credit provided in the Bad Debt Statute. Although this issue appears to be one of first impression in Maine, many other states have similar statutory provisions which have generated review by the courts and other appellate agencies. As might be expected, the authority cited from the other jurisdictions is split. Chrysler argues that it paid the sales tax and satisfies all of the conditions under the statute, or, in the alternative, that it received the dealer's rights under the statute through the assignment of the dealer's rights at the time of the sale. In support of the last point, Chrysler cites cases from the States of Washington (*Puget Sound National Bank v. Department of Revenue*, 868 P.2d 127

(Wash. 1994)), Indiana (*Chrysler Financial Co. v. Indiana Department of State Revenue*, 761 N.E.2d 909 (Tax Court of Indiana, 2002)), and Kansas (*Appeal of Ford Motor Credit Co.*, 2001 W.L. 1744109 (Kan. Bd. Tax App.)), among others. For its part, the respondent cites to cases including *Sun Trust Bank v. Johnson*, 46 S.W.3d 216 (Tenn. Ct. App. 2000) and *Department Rev. v. Bank of America*, 752 S.2d 637 (Fl. Ct. Ap. 2000). These latter cases emphasize statutory construction rather than the common law of assignments approach. Although both approaches have merit, this court concludes that the better approach, given our statute, is based upon statutory construction.

Actions to recover refunds or credit for sales that have become bad debts are creatures of statute and filings for refunds or credit must comply with the elements of the statute. Assessment appeals under Maine sales and use tax law are of statutory origin and must be construed strictly according to the statute. *Morrill v. Johnson*, 152 Me. 150, 125 A.2d 663 (Me. 1956). When a court interprets a statute, it must first look to the plain meaning of the statutory language to give effect to the legislative intent. *Cook v. Lisbon School Committee*, 682 A.2d 672, 676 (Me. 1996). In interpreting a statute, the court is to "remain mindful of the whole statutory scheme, of which the section at issue forms a part, so that a harmonious result may be achieved." *Daniels v. Tew Mack Aero Services, Inc.*, 675 A.2d 984, 987 (Me. 1996).

In addition to these general principles of statutory construction, the court must also consider the rules of construction that are specifically applied to tax statutes. "[T]ax exemption statute must be strictly construed, which means that all

4

doubt and uncertainty as to the meaning of the statute and legislative intendment must be weighed against exception." *Silverman v. Town of Alton*, 451 A.2d 103, 105 (Me. 1982). "The well settled principle that taxation is the rule and tax exemption is the exception places the burden on the [tax payer] to bring its request unmistakably within the spirit and intent of the claimed exemption." *SST & S, Inc. v. State Tax Assessor*, 675 A.2d 518, 521 (Me. 1996).

Before turning to the specific statute in question, it is important to understand that there are other sections of the tax law in which the Legislature has made provision for similar situations. Title 36 M.R.S.A. § 3214 concerns the special fuel tax and it provides: "The tax paid on sales made on credit and reported by a supplier pursuant to section 3209 found to be worthless and actually charged off may be credited upon the tax due to a subsequent report, but if any such accounts are thereafter collected by the supplier, a tax shall be paid upon the account so collected." This provision is very similar to the sales tax at issue and like section 1811-A provides for a credit against future taxes. The Legislature has also enacted 36 M.R.S.A. § 2906-A concerning the gasoline tax, which provides, "The retail dealer shall be entitled to a refund from the Treasurer of State for a portion of the tax paid to a distributor or importer," "on accounts of the retailer found to be worthless and actually charged off by the retailer." The importance of looking at all three of these "bad debt" statutes together is that it shows a continuity in legislative approach to the "bad debt" problem, while maintaining a distinction between refunds and credits. This distinction refutes Chrysler's argument that it should be able to recover

through a refund as an alternative to a credit. The distinction also implies a legislative intent that the taxpayer seeking recovery would be limited to a business doing retail sales and paying future sales tax against which the recovery may be credited. In other words, a business like Chrysler, which apparently did not conduct retail sales or pay sales tax in the State of Maine during the period in question, could not obtain the statutory remedy because it has nothing against which to apply the credit.

Chrysler argues that even if it were not a "retailer" entitled to the credit under section 1811-A, it became entitled to exercise the dealer's right when it stepped into these dealer's shoes as the result of the assignment of the loan accounts. Chrysler bases this argument on the common law of assignments and also on its interpretation of the statute based upon statutory definitions. The court recognizes the vitality and practice of assignment of contract rights, but those assignments do not necessarily act as an assignment of statutory "rights" if it was not the legislative intent that those rights be assignable. Chrysler argues that even though it was not registered as a retailer and apparently conducted no retail business during the years in question, it still becomes a retailer because the definition of "retailer" includes "any person" (36 M.R.S.A. § 1752(10)) and the term "person" includes an "assignee" (36 M.R.S.A. § 1752(9)). What Chrysler's argument neglects is the fact that it is not just any "person" who becomes a retailer; it must be a "person who makes retail sales." The broad definition of "person" found in subsection 9 is intended to be as inclusive as possible, while the definition of "retailer" is one of limitation, i.e.,

6

limited to those persons who conduct retail sales or who are required to register as retailers. The court concludes that while Chrysler can take assignment of the conditional credit sales from the automobile dealers, this does not make Chrysler a retailer and does not qualify it to obtain credits under section 1811-A.

This reading of legislative intent also makes good administrative sense. If those who may apply for the tax credit are limited to businesses doing retail sales and paying sales tax in Maine, it would be relatively easy for State revenue officials to match the sales, the tax payments and the credits. This process would inevitably become more difficult and fraught with opportunities for error if the entity claiming the credit has little contact with the State other than the fact that it is a holder in due course of the paper generated by the conditional or installment sale (which is not limited to automobiles).

In light of the foregoing, the entry will be:

Appeal DENIED, REMANDED to the State Tax Assessor.

Dated: June 13, 2002

_____
S. Kirk Studstrup
Justice, Superior Court

Date Filed __6/23/00__ ___Kennebec___ Docket No. __AP00-41__
County

Action ___Petition for Review___
80C

J. STUDSTRUP

DaimlerChrysler Services of North America, LLC
~~Chrysler Financial Company, XLLCx~~ VS. Executive Director, Maine Revenue Services

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| John M.R. Paterson, Esq.<br>Nelson A. Toner, Esq.<br>100 Middle Street<br>P.O. Box 9729<br>Portland, Maine 04101 | -Thomas Knowlton, AAG<br> State House Sta 6<br> Augusta Maine 04333 |

| Date of Entry | |
|---|---|
| 6/26/00 | Petition for Review, filed. s/Paterson, Esq. |
| 6/28/00 | Entry of Appearance by Thomas Knowlton, AAG. |
| 8/7/00 | Joint Motion for An Order to Specify Future Course of Proceedings and to Change the Name of Respondent, filed. s/Paterson, Esq. & Knowlton, AAG. Proposed Order, filed. |
| 8/8/00 | ORDER ON MOTION TO SPECIFY FUTURE COURSE, Marden, J.<br>(Discovery April 9, 2001)<br>Copies mailed to attys of record. |
| 8/22/00 | Letter from attorney Knowlton requesting that both AP00-33 and AP00-41 be treated together.but no consolidated at this time. |
| 8/23/00 | Notification of Discovery Service, filed. s/Knowlton, AAG.<br>State Tax Assessor's First Request for Production of Documents by Petitioner served on John Paterson, Esq. on 8/22/00. |
| 9/14/00 | Notification of Discovery Service, filed. s/Paterson, Esq.<br>Plaintiff's First Request for Production of Documents served on Thomas Knowlto AAG on 9/13/00. |
| 10/12/00 | Notification of Discovery Service, filed. s/Knowlton, AAG.<br>State Tax Assessor's Response to Plaintiff's First Request for Production of Documents served on John Paterson, Esq. on 10/11/00. |
| 10/16/00 | Notification of Discovery Papers, filed. s/Paterson, Esq.<br>Petitioner's Response to State Tax Assessor's First Request for Production of Documents served on Thomas Knowlton, AAG on 10/10/00 |